Chaniewicz *v.* Chaniewicz, Appellant.

Argued April 15, 1969. Before Wright, P. J., Watkins, Montgomery, Jacobs, Hoffman, Spaulding, and Cercone, JJ.

*Donald Laird Hankey,* for appellant.

*William C. Stillwagon,* with him *Boyle, Nakles, Reeves & Harwick,* for appellee.

Opinion by Jacobs, J., June 12, 1969:

On June 28, 1957, Paul Chaniewicz was ordered by the Court of Quarter Sessions of Westmoreland County to pay $100 per month for the support and maintenance of his wife, Victoria Chaniewicz. On September 27, 1963, after a hearing on a petition for reduction, the court reaffirmed its previous order for support and vacated the arrearages which had accrued to that

date. Mr. Chaniewicz died on October 5, 1966, at which time the accumulated arrearages under the 1963 order totaled $3676.00.

On April 25, 1967, a judgment for the arrearages which had accrued during the husband's lifetime was entered in favor of the wife in the Court of Common Pleas of Westmoreland County. The wife's counsel filed a praecipe in the prothonotary's office of Westmoreland County directing the entry of judgment. Appended to the praecipe was an exemplified record of both support orders of the court of quarter sessions; a copy of the 1963 order in quarter sessions duly certified by the clerk of that court; an affidavit of default sworn to by Victoria Chaniewicz; and a statement of account certified by the adult probation officer showing the amount of support arrearages as of October 5, 1966, the date of Paul Chaniewicz' death. Authority for this procedure is found in the Act of May 8, 1901, P.L. 143, §1, 12 P.S. §1001, which provides: "Where any court of quarter sessions . . . shall hereafter make or enter any order, sentence, decree or judgment for the payment of any moneys whatsoever, in any manner or thing within the jurisdiction of the said court, a copy of the said order . . . may be certified to any court of common pleas of the same county, and be entered and indexed in said court as a judgment with like force and effect as if the same had been recovered therein as a judgment of the latter court." The same day the judgment was entered an attachment execution was issued on the judgment against a redevelopment authority which held funds to which the estate of Paul Chaniewicz was entitled for property taken by the authority under its power of eminent domain.

On February 2, 1968, the executrix of the estate of Paul Chaniewicz filed a petition for a rule to show cause why the judgment and attachment execution should not be stricken from the record. The petition

alleged that the judgment was improperly entered against the defendant after his death and that it was not regular on its face because an exhibit attached to the judgment contained a notation of the date of his death. A rule was granted and served, and no answer being filed within the return period, an order was entered making the rule absolute and striking the judgment.[1]

Thereafter plaintiff petitioned for a rule to show cause why the order striking the judgment should not be set aside and the plaintiff be permitted to file an answer. After argument before the court en banc, the court ordered its previous rule striking the judgment stricken from the record and directed the plaintiff to file proper pleadings to bring the executrix on the record as a party defendant. The executrix appeals from this order.

The court below and both parties agree that arrearages in support of a wife survive the death of the husband. We, too, are satisfied that this result follows from the broad language on survival of actions in section 601 of the Fiduciaries Act of 1949, 20 P.S. §320.601. See also *Malone v. Malone*, 82 Pa. D. & C. 479 (C. P. Franklin 1952), and the opinion of Judge ERVIN, formerly President Judge of this Court, in *Neison v. Snyder*, 33 Del. 102 (C. P. Pa. 1944).

Appellant's main contention is that a judgment entered against a dead person is void, arguing that suit cannot be begun against a dead person. The court below answered this by saying that "this action for the collection of support was begun during the lifetime of the decedent in 1957. The proceedings by which the arrearages were reduced to judgment were only a further step in the original action started during the

---

[1] No mention was made of the attachment execution in the rule granted or the order striking the judgment.

decedent's lifetime." Thus the court held the judgment voidable only and not to be stricken off merely because the defendant was dead.

The lower court did not abuse its discretion in sustaining the judgment. This was not a situation in which a default judgment was entered against a deceased defendant for failure to appear, as in *Stevenson v. Virtue,* 13 Pa. Superior Ct. 103 (1900). Nor was it a case of judgment entered by confession on a warrant of attorney after the defendant's death. See *Kingston Nat'l Bank v. Walters,* 163 Pa. Superior Ct. 624, 63 A. 2d 380 (1949). Here the defendant's liability had been fixed in quarter sessions before his death. Since no motion to open the judgment was made, we assume that the appellant has no objection to the proceedings in quarter sessions or to the amount of the arrearages. The issues were fully litigated in quarter sessions when the order of support was made and as each installment of support became due it was recorded against the defendant during his lifetime. No rights of the defendant were determined after his death. They were fixed in quarter sessions and all that was done after defendant's death was the ministerial[2] act of certifying the quarter sessions decree to common pleas for entry therein as a judgment.

In *Com. ex rel. Eldredge v. Eldredge,* 175 Pa. Superior Ct. 276, 104 A. 2d 185 (1954), the lower court, after the death of the defendant husband, reinstated a support order and entered judgment for arrearages thereon to the date of his death. We affirmed this action and in an opinion by Judge (now President Judge) WRIGHT said: "[T]he court was not entering

---

[2] No direction or authority of the court was necessary to certify the decree, which by virtue of the statute can be certified by the clerk of quarter sessions. *Beck v. Finnefrock,* 72 Pa. Superior Ct. 544 (1919).

a new support order or reinstating an order properly terminated nor did the court determine any rights of the wife after the husband's death. Liability was not imposed beyond the duty of support which the husband owed during his lifetime, the amount of which had theretofore been fixed in a valid proceeding." *Id.* at 281, 104 A. 2d at 187.

That a judgment entered against a defendant after his death is voidable rather than void finds support in our case law. See *Warder v. Tainter,* 4 Watts 270, 281 (1835); *Radnor Bldg. & Loan Ass'n v. Scott,* 277 Pa. 56, 120 A. 804 (1923); *Stevenson v. Virtue,* supra. See also Goodrich-Amram Civil Proc. Rules Service §2352(b)-3 (Supp. 1968). Since nothing was done here after the death of defendant except to transfer a fully concluded case from quarter sessions to common pleas, we see nothing in the record to warrant striking the judgment.

The only issue before us is the correctness of the court's action in reinstating the judgment. The appellant, however, is concerned about the attachment execution issued on that judgment before it was stricken and now asks us to pass on its validity. This we cannot do because, so far as the record shows, the matter has not been presented to or decided by the lower court. Many interesting questions, however, remain for the lower court in which appellant must seek relief. The problem basically involves the rights and priorities of creditors of a decedent's estate. When defendant died, his estate, including his claim against the redevelopment authority, passed into the realm of the law governing administration and distribution. *Pavlick v. Zellermeyer,* 359 Pa. 278, 59 A. 2d 92 (1948). Distribution among creditors, as well as legatees and distributees, must be determined according to the substantive law heretofore administered exclusively by

the orphans' courts.[3]  See *Strouse v. Lawrence*, 160 Pa. 421, 28 A. 930 (1894).  We suggest that appellant ask the Court of Common Pleas to stay the execution until its Orphans' Court Division can pass on the claims against the estate.

Order affirmed.

---

[3] Under Article 5 of the Constitution of Pennsylvania, adopting a unified judicial system and the schedule thereto, approved by the voters on April 23, 1968, and made effective January 1, 1969, P.S. Const. Art. 5 §1, et seq., the orphans' courts were abolished and their jurisdiction transferred to the court of common pleas. The schedule further provided that orphans' courts in judicial districts having separate orphans' courts would become orphans' court divisions of the courts of common pleas who should exercise their orphans' court jurisdiction through their orphans' court divisions.  Westmoreland County is the 10th Judicial District and has a separate Orphans' Court.